**STATE of Utah, Plaintiff and Appellee,**

v.

**Kenneth TEMPLIN, Defendant and Appellant.**

**No. 890388.**

Supreme Court of Utah.

Dec. 7, 1990.

Rehearing Denied Feb. 6, 1991.

R. Paul Van Dam, Judith S.H. Atherton, Salt Lake City, for plaintiff and appellee.

Ronald J. Yengich, Salt Lake City, for defendant and appellant.

HALL, Chief Justice:

This is an appeal from a conviction of rape, a first degree felony.[1] On appeal, defendant claims that his trial counsel failed to investigate the availability of pro-

---

1. *See* Utah Code Ann. § 76–5–402 (Supp.1988). Defendant was also convicted of a misdemeanor theft, in violation of Utah Code Ann. § 76–6–404 (1973). This conviction, however, has not been appealed.

spective defense witnesses. He argues that this failure constitutes a denial of his constitutional right to effective assistance of counsel.[2] We reverse and remand for a new trial.

At trial, counsel for both the defense and the prosecution asserted that the only issue in contention was whether the victim in this case, Leslie Lavery, consented to sexual intercourse with the defendant Kenneth Templin.

On August 12, 1988, Lavery, who had known Templin for approximately one week, accompanied him to a club in the Sugarhouse area of Salt Lake City known as Bogart's. There was conflicting testimony concerning the amount of physical contact that occurred throughout the night. It is undisputed, however, that in the early part of the evening, Templin and Lavery were affectionate with each other. Templin met some of his friends at Bogart's, including Gale Boone, Tony Martinez, and Colleen Hussey. When the victim inquired about these people, defendant stated that many of his friends, including Martinez and Boone, were drug dealers who had been in jail half their lives. Shortly before closing time at Bogart's, Tony Martinez invited defendant to attend a party at his condominium. Lavery and Templin agreed to go to this party, which was also attended by Colleen Hussey and Gale Boone. At one point in the evening, both Lavery and Templin went to the back of the condominium to use the restroom. Although there were inconsistencies in testimony as to what happened prior to the time Lavery and Templin went to the back of the condominium, it was after this point that the descriptions of the events of that night directly conflicted.

The victim's testimony of the events is as follows: She went to use the restroom. Defendant followed her, grabbed her, and pulled her into the bathroom. In the bathroom, he attempted to undress her and himself and forced the victim into compromising sexual positions. Although Lavery repeatedly told him to stop, he relented only after people began to knock on the door to use the restroom. After Templin and Lavery left the restroom, they went into an adjacent bedroom, where they had a conversation with Martinez. When Martinez was called away, Templin locked the door, went over to where Lavery was sitting, and pushed her back on the bed. He then began to undress her. When she resisted, he stated that if she did not submit, he would get his friends, who would hold her down and would also want their turns. He also stated that if she did not cooperate, the only way she was going to leave the party was in an ambulance. He then forced her to have sexual intercourse. After the rape, he took her home and threatened to harm her and her daughter if she reported the incident.

Templin's version of what occurred is quite different. He testified that he entered the bathroom first and Lavery followed him in and initiated the sexual conduct. When people began knocking on the door, he suggested that they find a more appropriate place to continue. She agreed, and they went into the master bedroom. While in the bedroom, they spoke with Martinez. Templin asked Martinez if he and Lavery could use the room. Martinez agreed, left, and closed and locked the door behind him. Templin and Lavery then began to have sexual intercourse. Templin stated that they discussed birth control and that he agreed to withdraw from Lavery before he ejaculated. However, Templin testified that "he got a little carried away and didn't pull out in time." His failure to withdraw caused Lavery to become very angry. When defendant took her home, she was still upset.

In addition to Lavery, the prosecution called several other witnesses: Katherine Mosher, a friend of the victim's, who testified that on the morning after the party, Lavery told her about the rape; Tony Martinez, who did not corroborate defendant's story; and Jeff Anderson, a police officer, who testified regarding his questioning of defendant. In addition to defendant, the defense called Gayla Johnson, who testified

---

**2.** See U.S. Const. amend. VI; Utah Const. art. I, § 12.

that she was the bartender who served defendant and the victim at Bogart's.

The jury convicted Templin, and he was subsequently sentenced to an indeterminate term of five years to life. He then fired his trial counsel and hired new counsel, who expanded a motion for a new trial that was originally filed by Templin's trial counsel to include a claim of ineffective assistance of counsel.[3] In the hearing on the motion for a new trial, evidence was presented that Templin had provided his trial counsel with the names and addresses of several people who were with Templin and Lavery on the night in question. Two of these people, Colleen Hussey and Gale Boone, were at the party where, according to Lavery's testimony, the rape occurred. If called as witnesses in Templin's trial, these people would have testified to the amount of consensual physical contact that had occurred between Lavery and Templin. Colleen Hussey would have testified that she saw Lavery and Templin kissing passionately for fifteen minutes immediately prior to the time the rape allegedly occurred. The testimony of these witnesses, though not completely consistent with the Templin's testimony, contradicted several aspects of Lavery's testimony.

Although the trial judge found that Templin's trial counsel did not contact several people who were with Templin and Lavery on the night in question, the judge concluded that failure to contact the prospective defense witnesses did not constitute ineffective assistance of counsel. Furthermore, the trial judge concluded that even if the witnesses had been called, there was not a reasonable probability that the outcome of the trial would have been different. The motion for a new trial was therefore denied. On February 1, 1990, defendant, through counsel, filed a notice of appeal.

The sole issue on appeal is whether defendant's trial counsel failed to adequately investigate the availability of prospective witnesses and whether such a failure constitutes a violation of defendant's constitutional right to effective assistance of counsel. In arguing that he was denied effective assistance of counsel, defendant cites article I, section 12 of the Utah Constitution, as well as amendment VI of the United States Constitution. He does not, however, provide any separate argument or authority for the proposition that the guarantees to counsel under the Utah Constitution differ from the guarantees to counsel under the United States Constitution. We therefore choose to consider only the claim based on the federal Constitution.[4]

## I. STANDARD OF REVIEW

■ The State maintains that defendant is appealing from a motion for a new trial. Since the decision to grant or deny a new trial is a matter of discretion with the trial court, the State contends that the decision should not be reversed absent a clear abuse of discretion. A review of the record, however, reveals that defendant has appealed from both the denial of his motion for a new trial and his original conviction. On direct appeal, this court, in deciding ineffective assistance claims based on the federal Constitution, has relied on the United States Supreme Court's decision in *Strickland v. Washington*.[5] In *Strickland*, the United States Supreme Court held that the same principles which apply in addressing ineffective assistance claims in motions for new trials apply on direct appeal and in habeas corpus actions.[6] There is no reason, therefore, to depart from the standard

---

3. The original motion for a new trial was based on a claim of insufficiency of the evidence. This claim was not pursued by Templin's new counsel and was not presented on appeal.

4. *State v. Verde,* 770 P.2d 116, 118 n. 1 (Utah 1989); *State v. Lafferty,* 749 P.2d 1239, 1247 n. 5 (Utah 1988); *State v. Bingham,* 684 P.2d 43, 45 (Utah 1984).

5. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). For Utah decisions relying on *Strickland,* see, e.g., *State v. Bullock,* 791 P.2d 155, 160 (Utah 1989); *State v. Carter,* 776 P.2d 886, 893 (Utah 1989); *State v. Verde,* 770 P.2d at 118–20 & n. 2, 124 & n. 15; *State v. Speer,* 750 P.2d 186, 191–92 (Utah 1989).

6. *Strickland v. Washington,* 466 U.S. at 697, 104 S.Ct. at 2069.

of review set out in *Strickland* simply because the appeal was preceded by a motion for new trial.

■ The *Strickland* Court held that ineffective assistance of counsel claims present a mixed question of fact and law.[7] Therefore, in a situation where a trial court has previously heard a motion based on ineffective assistance of counsel, reviewing courts are free to make an independent determination of a trial court's conclusions.[8] The factual findings of the trial court, however, shall not be set aside on appeal unless clearly erroneous.[9]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

■ The sixth amendment to the United States Constitution states in part, "In all criminal prosecutions, the accused shall enjoy the right to ... have Assistance of counsel for his defense."[10] The right to counsel has been held to be "the right to effective assistance of counsel."[11] As has been noted above, in determining whether criminal defendants, by reason of the performance of counsel, have been denied their sixth amendment right to counsel, this court has followed the United States Supreme Court's case of *Strickland v. Washington*.[12] In *Strickland*, the Court set out a two part test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[13]

■ Defendant has the burden of meeting both parts of this test.[14] It has been established that the sixth amendment guarantees a criminal defendant "reasonable effective assistance"[15] of counsel. Therefore, in order to meet the first part of this test a defendant must "identify the acts or omissions"[16] which, under the circumstances, "show that counsel's representation fell below an objective standard of reasonableness."[17] Furthermore, in assessing trial counsel's performance, an appellate court must keep in mind "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant."[18] The appellate court must therefore "indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "[19]

■ A defendant, in meeting the burden[20] in regards to the second part of the

---

7. *Id.* 466 U.S. at 698, 104 S.Ct. at 2070.

8. *See id.; Laws v. Armontrout,* 863 F.2d 1377, 1381 (8th Cir.1988); *State v. Crestani,* 771 P.2d 1085, 1089 (Utah Ct.App.1989).

9. *See, e.g., State v. Goodman,* 763 P.2d 786, 787 n. 2 (Utah 1988); *State v. Walker,* 743 P.2d 191, 193 (Utah 1987).

10. U.S. Const. amend. VI.

11. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970); *see also State v. McNicol,* 554 P.2d 203, 204 (Utah 1976).

12. *See supra* note 5.

13. *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064.

14. *See id.*

15. *Id.*

16. *Id.* at 690, 104 S.Ct. at 2066.

17. *Id.* at 688, 104 S.Ct. at 2064.

18. *Id.* at 689, 104 S.Ct. at 2065.

19. *Id.* (citations omitted).

20. In ineffective assistance claims alleging a deficiency in attorney performance, the defendant must affirmatively prove prejudice. *Strickland v. Washington,* 466 U.S. at 693, 104 S.Ct. at 2067. However, in sixth amendment claims based on actual denial of counsel, constructive denials of counsel, or conflict of interests, prejudice is presumed. *See Strickland v. Washington,* 466

test, "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [21] In making this determination, an appellate court should consider the totality of the evidence, taking into account such factors as whether the errors affect the entire evidentiary picture or have an isolated effect and how strongly the verdict is supported by the record.[22]

 A review of the record reveals that in the instant case, the first part of the *Strickland* test has been met. Defendant's claim is based on the assertion that his trial counsel did not make a reasonable investigation into the availability of prospective defense witnesses. Specifically, defendant claims that although he provided his counsel with a list of prospective witnesses, his counsel did not contact several of the people on the list. In the order denying the motion for a new trial, the trial court found:

> The defendant's trial attorney did not speak with or call as witnesses several persons who had seen the defendant and the victim together on the date of the alleged rape.... [Defendant's trial counsel] did not investigate, interview or call at least three persons named by the defendant because: a) The defendant did not supply him with Ms. Hussey's correct name until several weeks after the preliminary hearing. b) [Defendant's attorney] felt that Mr. Gale Boone, described to him by the defendant as a bad person who had a criminal record, would not make a good witness. c) [Defendant's attorney] felt that Gayla Johnson and the defendant would supply the jury with sufficient information regarding the sex-

ual activity between the victim and the defendant.

As discussed above, when a trial court has heard a motion for a new trial based on an ineffective assistance claim, an appellate court will not set aside the findings of fact unless they are clearly erroneous.[23] In the instant case, the record supports the trial judge's findings. Whether the decision not to contact the prospective witnesses was a reasonable one, however, is a question of law which can be independently reviewed.[24]

Initially, it should be pointed out that trial counsel did not contact these people even though he had adequate time and resources to prepare his case. Defense counsel was hired after defendant's arraignment, charged him $9,000, and had almost a year to prepare for trial. With regard to the trial court's findings, the fact that defendant did not provide his trial counsel with Colleen Hussey's correct name until several weeks after the preliminary hearing does not excuse counsel's failure to contact her prior to trial. At the motion for a new trial, defendant's father testified that he was successful in locating Hussey prior to trial. Furthermore, there is no evidence that Templin's trial counsel ever attempted to contact Hussey. Similarly, the fact that Templin's trial counsel, after a discussion with Templin, concluded that Boone would not make a good witness does not excuse his failure to contact the other prospective witnesses in the case. Finally, the fact that Templin's trial counsel felt that the testimony of Johnson and Templin provided adequate information about "the sexual activity between the victim and the defendant" is not a tactical decision which can be characterized as reasonable professional assistance. Trial counsel made this decision without contacting any of the other potential witnesses,

---

U.S. at 692, 104 S.Ct. at 2067; *see also United States v. Cronic*, 466 U.S. 648, 659 & n. 24, 104 S.Ct. 2039, 2047 & n. 24, 80 L.Ed.2d 657 (1984); *Cuyler v. Sullivan*, 446 U.S. 335, 348, 350, 100 S.Ct. 1708, 1718, 1719, 64 L.Ed.2d 333 (1980).

21. *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068; *see also State v. Verde*, 770 P.2d at 118–19 n. 2, 124 n. 15.

22. *See id.* 466 U.S. at 696, 104 S.Ct. at 2069.

23. *See supra* notes 6–10 and accompanying text.

24. *Strickland v. Washington*, 466 U.S. at 698, 104 S.Ct. at 2070.

and only on the day of trial did he interview Gayla Johnson.

If counsel does not adequately investigate the underlying facts of a case, including the availability of prospective defense witnesses, counsel's performance cannot fall within the "wide range of reasonable professional assistance."[25] This is because a decision not to investigate cannot be considered a tactical decision. It is only after an adequate inquiry has been made that counsel can make a reasonable decision to call or not to call particular witnesses for tactical reasons. Therefore, because defendant's trial counsel did not make a reasonable investigation into the possibility of procuring prospective defense witnesses, the first part of the *Strickland* test has been met.

 In the instant case, the second part of the *Strickland* test has also been met. If called as witnesses, several of the people would have testified to the amount of consensual physical contact that occurred between Lavery and Templin at Bogart's. The most important witness would have been Colleen Hussey, who had the opportunity to observe the couple both at the club and at the party, where, according to Lavery, the rape occurred.[26] In denying the motion for a new trial, the trial court found that "Colleen Hussey would have testified that she saw defendant and the victim kissing passionately for over fifteen minutes and that this kissing happened at the address of and within an hour of the rape reported by the victim." This testimony is important for the reason that it reflects upon the credibility of Lavery, be-cause Hussey's testimony, although not completely consistent with Templin's testimony, contradicts several aspects of Lavery's testimony. This is important in the instant case because Lavery's testimony is the only direct evidence of Templin's guilt.

 In reviewing this testimony, it is important to note that because it affects the credibility of the only witness who gave direct evidence of defendant's guilt, the testimony affects the "entire evidentiary picture."[27] It should also be noted that although it is undisputed that a person can be convicted of rape solely on the testimony of the victim,[28] the State's case rested upon the testimony of one person. There is no independent physical evidence that supports or contradicts Lavery's testimony. The conviction, therefore, is not strongly supported by the record. Furthermore, Hussey's testimony is not cumulative. Johnson did not testify as to what occurred at the party, and her testimony, unlike Hussey's, does not directly contradict Lavery's testimony. To the extent that Hussey's and the other prospective witnesses' testimony is duplicative of Johnson's and Templin's testimony, the testimony would be important in bolstering Templin's credibility and undermining Lavery's. An appellate court cannot discern the exact effect such testimony would have had on the jury's judgment concerning the credibility of Templin and Lavery. The testimony, however, is of sufficient import that we feel there is a reasonable probability that if these witnesses had been called at trial, the outcome of the trial would have been dif-

25. *Id.* at 686, 104 S.Ct. at 2064. Several courts have held that criminal defendants have been denied the right to assistance of counsel in situations where counsel did not make a reasonable investigation into the possibility of obtaining prospective defense witnesses. *See State v. Tapia,* 151 Ariz. 62, 725 P.2d 1096, 1097–98 (1986); *People v. Cole,* 775 P.2d 551, 554–55 (Colo.1989); *State v. Crestani,* 771 P.2d 1085, 1091 (Utah Ct.App.1989).

26. Defendant argues that his trial counsel should have also called Gale Boone, who was also at the party with Templin and Lavery, as a witness. Defendant has provided this court with an affidavit stating that Boone was never contacted by defendant's trial counsel. However, Templin has not provided this court with any evidence concerning what Boone would have testified to if he had been called during trial. Templin has therefore not met the burden of showing that if Boone had testified, there is a reasonable probability that the result of his trial would have been different. *See Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. at 2068.

27. *Strickland v. Washington,* 466 U.S. at 696, 104 S.Ct. at 2069.

28. *See State v. Archuleta,* 747 P.2d 1019, 1021 (Utah 1987); *State v. Stettina,* 635 P.2d 75, 76–77 (Utah 1981).

ferent. Since both parts of the *Strickland* test have been met, we hold that Templin was denied his constitutional right to effective assistance of counsel.

Reversed and remanded for a new trial.

HOWE, Associate C.J., and STEWART, DURHAM, and ZIMMERMAN, JJ., concur.