STATE of Utah, Plaintiff and Appellee,

v.

Noel C. HUGGINS, Defendant
and Appellant.

No. 930405–CA.

Court of Appeals of Utah.

July 5, 1996.

Scott L. Wiggins and Mark E. Arnold, Holmgren, Arnold & Wiggins, L.C., Salt Lake City, for Appellant.

Jan Graham, Atty. Gen., and James H. Beadles, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BENCH, JACKSON and WILKINS, JJ.

## OPINION

WILKINS, Judge:

Noel C. Huggins appeals from his conviction for rape, alleging that he received ineffective assistance of counsel in violation of his Sixth Amendment right. We affirm.

## BACKGROUND

On the morning of November 10, 1992, the victim, a twenty-four-year-old woman, left her Layton apartment to go to work at the South Davis Community Hospital in Bountiful. Her typical routine included leaving her apartment at 4:30 a.m.; walking two miles to a bus stop on State Street in Clearfield; catching the 5:30 a.m. bus coming from Ogden; and arriving at work some time before 7:00 a.m., when her shift began.

That morning, the victim left her apartment at the usual hour. The temperature at that time was between 25 and 27 degrees Fahrenheit, with a wind-chill factor around six degrees. After she had been walking about ten minutes, a car pulled up next to her. Two men were inside, Huggins and Dennis Batchlor, with Huggins driving. At the time, Huggins and Batchlor were traveling home from a friend's house, where they had been drinking. When Huggins pulled up next to the victim, Batchlor asked her if she wanted a ride.

The victim said she needed to go to State Street to catch the bus to Bountiful and got into the back seat of Huggins's car. Instead of going to the stop, however, Huggins drove the other way. The victim testified that she requested more than once for Huggins to let her out so she could walk to the bus stop.

Declining to let her out, Huggins promised the victim that he would get her to work, but that he needed to take Batchlor home first "because he was super, super drunk." The victim testified that she did not want to be in the car, which reeked of alcohol. She also testified that Huggins drove erratically, leading her to believe that he was also drunk.

Huggins eventually drove to a residence in Washington Terrace, where Batchlor left the vehicle for a few minutes. The victim testified that while Batchlor was inside the residence, Huggins and the victim conversed. During the course of the conversation, he told her that he had recently been in prison. This increased her anxiety, but she testified that she did not leave the vehicle because it was still dark and she was in unfamiliar territory.

When Batchlor returned, Huggins drove out of Washington Terrace and towards Ogden. Upon arriving at a residence in Ogden, Batchlor again left the vehicle. During this time, the victim moved into the front passenger seat. Soon after, Batchlor returned again, and Huggins drove to a local convenience store so that Batchlor could give Huggins some gas money. Afterwards, Huggins dropped Batchlor off at the Ogden residence and then proceeded south with the victim.

Huggins drove on surface streets south toward Bountiful, but instead of going directly there, he pulled behind Crown Billiards in Clearfield and stopped the vehicle. According to the testimony of the victim, at this location Huggins forced himself upon her and raped her despite her protestations. She testified that she did not struggle too much physically because she was afraid of Huggins. To the contrary, Huggins testified that the victim had made physical advances towards him on the way to Bountiful, such as putting her hand on his knee and rubbing his leg and his shoulder. He agrees that he pulled behind Crown Billiards, but contends that the two engaged in consensual sexual intercourse.

Huggins then drove the victim to a convenience store, located four blocks from her job at the hospital. There the victim got out of the car, leaving a bag with a change of clothes inside. Huggins drove off.

The victim arrived at work a few minutes before 7:00 a.m., at which time the victim entered her supervisor's office and intimated that she had been raped on the way to work. A friend of the victim also came into the supervisor's office, and the victim collapsed on her friend's shoulder, sobbing. These two women took the victim to the Clearfield Police Department, where the victim reported the rape.

The State eventually charged Huggins with rape and forcible sexual abuse, and the trial court appointed counsel. At trial, the victim, Huggins, and others testified. However, Batchlor, who had been subpoenaed by the State, refused to appear at trial because of outstanding warrants for his arrest. The victim's testimony was the only direct evidence of the alleged rape. Subsequently, a jury convicted Huggins of rape, and the trial court imposed an indeterminate sentence of five years to life.

Huggins's current counsel, appointed for the appeal, filed a motion for a hearing to find facts regarding trial counsel's effectiveness. *See* Utah R.App. P. 23B. After the hearing, the trial court found that Huggins's trial counsel had no contact with Batchlor either before or during trial even though Huggins had wanted Batchlor called as a witness. At the 23B hearing, Batchlor testified that, while he was in the car, the victim appeared to be "getting along" with Huggins because she and Huggins were "talking and chatting" and because she had moved to the front seat when Batchlor was away from the vehicle. He also testified that the victim did not appear afraid of Huggins and that he never witnessed "anything sexual" between the victim and Huggins.

The court also determined that trial counsel had made no attempts to contact or subpoena any character witnesses, even though Huggins requested that trial counsel call some of Huggins's former acquaintances for that purpose. Seven potential character witnesses appeared at the 23B hearing. The court found that each would testify similarly:

> The character witnesses called by the defendant at hearing testified that they had previously known him while in high school in 1988 and 1989. They had sluffed school together and gone to his trailer 2 or 3 times a week during that period.... The character witnesses testified that they had little contact with defendant after ... September of 1990. The witnesses [all female] indicate that none of them had any sexual contact with him nor did they observe any inappropriate sexual conduct, and as of September 1990, they were of the opinion that he would not engage in intercourse without consent of the other party. Except for Amy Fisher, ... none of the other character witnesses had any contact with the defendant since 1990.

Huggins now claims on appeal that he was denied the effective assistance of counsel at trial.

## ANALYSIS

The Sixth Amendment to the United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of counsel for his defence." U.S. Const. amend. VI. Both federal and state courts have held the right to counsel means the right to "effective assistance of counsel." *See State v. Templin*, 805 P.2d 182, 186 (Utah 1990).

Huggins challenges his conviction on the basis that he received ineffective assistance of counsel, thus violating his Sixth Amendment right. Huggins claims his trial counsel's performance fell below an objective standard of reasonable professional judgment, in that counsel failed to contact and talk directly to Batchlor or to any of the potential character witnesses requested by Huggins. *See State v. Gordon*, 913 P.2d 350, 355 (Utah 1996) (requiring that objectively deficient performance first be shown to prove ineffective assistance). Huggins further claims he was prejudiced by his counsel's deficient performance. *See id.* (indicating prejudice must be shown to establish second prong of ineffective assistance claim).

In a situation where the trial court has held a Rule 23B hearing and made specific findings relevant to an ineffective assistance of counsel claim, we defer to the trial court's findings of fact. *Cf. State v. Perry*, 899 P.2d 1232, 1238 (Utah App.1995). We then apply the appropriate legal principles to the facts and decide, for the first time on appeal, whether the defendant received ineffective assistance of counsel in violation of the Sixth Amendment. *See id.* (regarding the application of legal principles).

## I. Dennis Batchlor

We first examine whether the trial counsel's failure to contact and talk to Batchlor constituted deficient performance and, if so, whether Huggins was prejudiced by this performance. We recognize that this two-pronged analysis is not to be "applied as a mechanical test but [is] meant to help us answer the ultimate question of whether the 'defendant receive[d] a fair trial.'" *Gordon*,

913 P.2d at 355 (quoting *State v. Frame*, 723 P.2d 401, 405 (Utah 1986)).

In reviewing an alleged deficiency in counsel's performance at trial, we indulge "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). However, a trial counsel's decision not to "investigate the underlying facts of a case, including the availability of prospective defense witnesses, ... cannot be considered a [valid] tactical decision." *Templin*, 805 P.2d at 188. Only after an adequate inquiry has been made can counsel make a reasonable decision to call or not to call a particular witness for tactical reasons. *Id.; see also Gordon*, 913 P.2d at 356. Indeed, "'[t]he Sixth Amendment imposes on counsel a duty to investigate, because reasonably effective assistance must be based on professional decisions[,] and informed legal choices can be made only after investigation of options.'" *State v. Crestani*, 771 P.2d 1085, 1090 (Utah App.1989) (quoting *Strickland*, 466 U.S. at 680, 104 S.Ct. at 2060).

Even so, we conclude that Huggins's trial counsel did in fact make an "adequate inquiry" into Batchlor's value as a witness. Trial counsel reviewed the police report regarding Batchlor, talked to the officer who interviewed Batchlor, and relied on Huggins's own statements concerning Batchlor. By these means, counsel learned that Batchlor was intoxicated while in the car with Huggins and the victim, that he was not present when the victim allegedly made sexual advances to Huggins nor when intercourse took place, that he was completely incoherent when speaking to the investigating officer on the very next day, and that he had been previously convicted of theft and burglary. On the basis of his inquiry, counsel determined that Batchlor had no value as a witness and stopped investigating him.

"[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable pro-

fessional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations *or to make a reasonable decision that makes particular investigations unnecessary.*" *Id.* (emphasis omitted in part) (quoting *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066). In light of the broad deference given to trial counsel's tactical decisions, including decisions concerning allocation of pretrial resources, we must conclude that Huggins's trial counsel made a reasonable decision in discontinuing any investigation of Batchlor. *See Perry,* 899 P.2d at 1239–40. Trial counsel in this case had already made sufficient inquiry into Batchlor's value as a witness.

Even *Templin,* a case upon which Huggins relies heavily for support, suggests that such an inquiry would be adequate. In that case, Templin, in a discussion with his trial counsel, had described one potential witness, Mr. Boone, as a bad person who had a criminal record. The Utah Supreme Court indicated "the fact that Templin's trial counsel, after discussion with Templin, concluded that Boone would not make a good witness does not excuse his failure to contact the *other* prospective witnesses in the case." *Templin,* 805 P.2d at 187 (emphasis added).

Huggins has failed to demonstrate that his counsel's performance in investigating Batchlor fell below an objective standard of reasonable professional judgment. Accordingly, we do not reach the second prong of the analysis, whether Huggins was prejudiced by his counsel's performance.

## II. The Character Witnesses

Huggins also asserts that his trial counsel's failure to contact and talk to any potential character witnesses, despite being given names by Huggins, constituted deficient performance. Huggins relies on the same reasoning asserted with respect to Batchlor's situation: "'a decision not to investigate cannot be considered a tactical decision.'" *Gordon,* 913 P.2d at 356 (quoting *Templin,* 805 P.2d at 188).

■■■■ However, we need not reach the issue of deficient performance because any analysis regarding the character witnesses is more easily resolved under the prejudice prong of the ineffective-assistance test. Even if we were to accept the argument that trial counsel's performance fell below an objective professional standard, Huggins still has the burden of showing "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Templin,* 805 P.2d at 187 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068).

The character witnesses, if called at trial, would merely have testified that, based upon their experience with Huggins in high school, they were of the opinion that he would not rape someone. None of the potential witnesses ever had any sexual relationship with Huggins or had ever witnessed any sexual activity by Huggins, and none had any meaningful contact with Huggins in the two years prior to the commission of the rape in this case. While we cannot discern the exact effect such testimony would have had on the jury's judgment concerning Huggins, we do not consider the testimony to be of such significance as to have had any likely effect on the outcome of Huggins's case.

Furthermore, in light of the Division of Correction's diagnostic report concluding that Huggins "was not capable of delaying gratification and couldn't control his impulses and was a pathological liar," the State likely could have produced witnesses whose opinions would contradict those of Huggins's witnesses. *See* Utah R. Evid. 404(a)(1), 405(a). Accordingly, Huggins has failed to establish that he was prejudiced by any alleged deficient performance of his trial counsel.

## CONCLUSION

We conclude that trial counsel's performance with respect to Mr. Batchlor was not deficient so as to fall below an objective standard of reasonable professional judgment. The failure to talk directly with Mr. Batchlor can be characterized as a tactical decision which we decline to second-guess.

We further conclude that Huggins was not prejudiced by his counsel's failure to contact

the character witnesses. We do not see any reasonable likelihood that Huggins would have been acquitted had the character witnesses testified at trial. Accordingly, our confidence in the outcome of his case is not undermined.

As a result, Huggins has failed to meet his burden of proving ineffective assistance of counsel. We therefore conclude that Huggins was not denied his Sixth Amendment right to counsel and affirm his conviction.

BENCH and JACKSON, JJ., concur.