**STATE of Utah, Plaintiff and Appellee,**

v.

**Von Lester TAYLOR, Defendant and Appellant.**

No. 910496.

Supreme Court of Utah.

Oct. 24, 1997.

Jan Graham, Atty. Gen., J. Frederic Voros, Jr., Asst. Atty. Gen., Robert W. Adkins, Coalville, Terry L. Christiansen, Park City, for plaintiff and appellee.

J. Bruce Savage, Park City, for defendant and appellant.

DURHAM, Justice:

We hear this appeal from a capital conviction pursuant to section 78–2–2(3)(i) of the Utah Code. Defendant Von Lester Taylor pled guilty to two counts of capital murder in 1991. After a sentencing hearing, the jury returned two verdicts imposing the death sentence. Taylor appealed the sentence and subsequently fired his attorney, Elliot Levine. Taylor maintained his appeal with new counsel, asserting claims of inadequate representation at trial. In 1994, when the matter came before this court the first time, we remanded it to the trial court to hold a rule 23B hearing on the ineffective assistance of counsel claims and collateral claims. We now have the results of that hearing and treat all issues raised in the appeal.

The facts of the underlying crimes are as follows: In December 1990, Taylor left a halfway house where he was housed while on parole after imprisonment for aggravated burglary. Subsequently, Taylor and Edward Steven Deli broke into the Tiede family cabin near Beaver Springs, Utah, while the Tiedes were in Salt Lake City. Once in the cabin, Taylor called a friend and told him that he intended "to shoot some people." Shortly

thereafter, Mrs. Tiede arrived at the cabin with her mother and her daughter. Taylor and Deli confronted them with guns, and Taylor shot Mrs. Tiede and her mother. When Mrs. Tiede's daughter started to pray, Taylor told her it would do no good because he worshiped the devil. Later that afternoon, Mr. Tiede and another of the Tiedes' children arrived at the cabin. Defendant held Mr. Tiede at gun point, stole $105 from him, and shot him in the face with bird shot at least once and possibly twice. After trying to set fire to Mr. Tiede, the house, and the garage, Taylor and Deli fled by snowmobile and then by car, taking the two Tiede daughters with them. The police apprehended Taylor and Deli later that day. Mr. Tiede survived the attack.

The police charged Taylor with two counts of criminal homicide in the first degree, one count of attempted criminal homicide in the first degree, aggravated arson, two counts of aggravated kidnaping, aggravated robbery, theft, failure to respond to an officer's signal to stop, and aggravated assault. When Taylor agreed to plead guilty to the two counts of criminal homicide, the State dropped the other charges.

This appeal raises only the issues addressed at the rule 23B hearing, namely, whether Taylor's initial attorney, Levine, provided ineffective assistance of counsel and in doing so prejudiced the outcome. Taylor asserts multiple grounds for finding ineffective assistance of counsel: (1) Levine misinformed him about the effect of a guilty plea, which led him to plead guilty when he would not otherwise have done so; (2) Levine's philosophy about the role of the defense attorney conflicted with his duty to represent Taylor and caused Taylor to plead guilty involuntarily; and (3) the minimal compensation Levine received for Taylor's representation created a conflict of interest depriving Taylor of effective assistance of counsel. Taylor also suggests that the various errors by Levine resulted in cumulative error at the penalty phase, rendering the sentence arbitrary and capricious.

Following the rule 23B hearing, the trial court found that the prosecution had presented overwhelming evidence of Taylor's participation in the crimes alleged: one person witnessed the murders; multiple people saw the attempted murder and the aggravated kidnapings; and a police officer apprehended Taylor as Taylor fled the crime scene with hostages. The trial court also found, contrary to Taylor's testimony, that Levine did not tell Taylor that the penalty phase would exclude evidence of the crimes for which charges had been dropped. During plea discussions, with Taylor present, the court explicitly stated that it would have to rule on the admissibility of the evidence relevant to the dropped charges at the penalty phase. Levine had prepared to take the case to trial and advised Taylor to do so; he did not pressure Taylor to plead guilty. Taylor pled voluntarily because he did not want to put his family and the victims through a trial and he did not want to testify against Deli.

With regard to Levine's "philosophy," the trial court found that in his closing argument Levine did assert a position which conflicted with his role as a defense attorney. In that argument, Levine described his role as helping defendants admit their guilt and take the appropriate punishment. Nonetheless, the court believed Levine's testimony at the rule 23B hearing that his real beliefs differ from those he described at trial and that he made the statements at trial to garner the jury's trust and encourage its leniency. Furthermore, Taylor failed to provide any evidence that Levine actually encouraged him to plead guilty. The court also found that Levine's statement did not prejudice Taylor because it fell within the broad range of reasonable professional judgment about jury strategy.

Concerning the conflict resulting from inadequate compensation, the court found that Levine served as Taylor's lawyer under a contract with Summit County to provide criminal defense services. For two years of services, Levine received $24,000. As the legal defender for the county, Levine defended clients in various courts and pursued habeas claims. Levine also maintained a private practice that, during the months he represented Taylor, provided eighty to ninety percent of his gross income. Levine spent approximately sixty-nine percent of his time between January and May 1991 on the Tay-

lor case. He spent fifty percent of that time in consultation with Taylor and with Taylor's parents. The trial court found that money did not matter to Levine and that his income did not affect his decisions in this case.

One of Taylor's claims is that Levine chose not to pursue a psychological exam of Taylor because Levine thought further exams would prove fruitless and the exams already performed to determine sanity and competency would be disclosed to the jury, hurting Taylor's case. The reports from the previous exams included information regarding Taylor's interests in Satanism and witchcraft, as well as previous drug abuse. One of the psychological evaluations did say that Taylor showed signs of antisocial personality disorder with schizoid personality features, but Levine determined that the negative information about Taylor's character and behavior would offset any potential benefit from suggesting the existence of a personality disorder. The court found that Levine's decision to omit mental health testimony fell within the broad range of reasonable professional judgment. Levine did not obtain Taylor's school records but did ask Taylor about his school days. Levine also failed to obtain Taylor's health records, his juvenile court records, and his family's psychological records. He did not interview Taylor's friends or family members other than his mother and father. Taylor, on the other hand, has failed to provide any evidence that if Levine had performed any of the suggested investigations, the outcome of the trial would have differed. He does not even suggest what such investigation would have revealed and how the revelations would have improved his position with the jury. The court found that Levine's performance did not fall below the reasonableness threshold.

■ We defer to a trial court's findings of fact after a rule 23B hearing. *State v. Huggins,* 920 P.2d 1195, 1198 (Utah Ct.App. 1996). From these facts, we must decide whether Taylor received ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution.[1] *See id.* This court reviews Sixth Amendment ineffective assistance questions under a two-part analysis: (1) The defendant must demonstrate that counsel's performance " 'fell below an objective standard of reasonableness' "; and (2) he must show that absent counsel's errors, he had a reasonable chance to prevail, and thus the errors undermine confidence in the outcome. *State v. Templin,* 805 P.2d 182, 186–87 (Utah 1990) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). When reviewing counsel's performance, " 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Id.* at 186 (quoting *Strickland* at 689, 104 S.Ct. at 2065).

## I. MISINFORMATION ABOUT SCOPE OF PENALTY PHASE

■ Taylor claims that Levine specifically told him that the sentencing hearing would exclude all evidence about the dropped charges of attempted homicide, aggravated arson, aggravated kidnaping, aggravated robbery, theft, etc. Taylor argues that the trial court's factual finding that Levine did not misinform Taylor about the likelihood of preventing this evidence from entering into the penalty phase was clearly erroneous.

■ We consider a trial court's findings of fact clearly erroneous when they "are against the clear weight of the evidence." *State v. Walker,* 743 P.2d 191, 193 (Utah 1987). Evidence presented at the rule 23B hearing supports the finding that Levine correctly informed Taylor about the scope of the penalty phase. Levine testified that he told Taylor that the penalty phase would resemble very closely a guilt phase but that Levine could possibly prevent the State from introducing certain inflammatory photographs as evidence. The transcript of the plea proceedings supports Levine's version and undermines Taylor's testimony to the contrary. At the plea hearing, Taylor heard the prosecution say that it intended to introduce evidence of the dismissed charges. Levine registered his intent to object to such evidence. When asked by the court if he was satisfied with Levine's performance, Taylor responded

---

1. Taylor did not advance a claim under the Utah Constitution.

affirmatively on two occasions during the plea proceedings. Although the judge could have found Taylor credible at the rule 23B hearing, he did not, and enough evidence supports the judge's finding to prevent us from holding it clearly erroneous. Hence, Levine did not misinform Taylor or provide ineffective assistance of counsel in this manner.

## II. CONFLICT IN DEFENSE ROLE

■■■ Taylor claims that Levine's philosophy about the role of a defense attorney conflicted with his duty to represent Taylor, resulting in an involuntary guilty plea and prejudicing the outcome of the penalty phase. The right to counsel encompasses " 'the right to counsel free from conflicts of interest.' " *State v. Webb,* 790 P.2d 65, 72 (Utah.Ct.App. 1990) (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064), *denial of habeas aff'd. sub nom. by Webb v. Van Der Veur,* 853 P.2d 898 (Utah.Ct.App.1993) *and by Webb v. Van Der Veur,* 67 F.3d 312 (10th Cir.1995). Defendants claiming ineffective assistance of counsel resulting from a conflict of interest must show that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). "In order to establish an actual conflict, [the defendant] must demonstrate 'as a threshold matter ... that the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests.' " *United States v. Acevedo,* 891 F.2d 607, 610 (7th Cir.1989) (ellipsis in original) (quoting *United States v. Horton,* 845 F.2d 1414, 1419 (7th Cir.1988)). Once a defendant demonstrates an actual conflict, there is no need to show prejudice. *Cuyler* at 349–50, 100 S.Ct. at 1718–19.

The trial court found that Levine did not actually believe a defense attorney should help his client admit to his wrongdoing, but merely asserted that position in an effort to acquire credibility with the jury. Levine's testimony at the rule 23B hearing provided adequate evidence to support that finding. Furthermore, nothing in the record indicates that Levine behaved in any way that was in conflict with Taylor's interests. Levine nev-

er told Taylor to plead guilty and in fact tried to discourage him from doing so. Moreover, Taylor himself testified that he pled guilty for personal reasons, not because of his attorney's advice. Thus, the alleged conflict does not undermine our confidence in the voluntariness of the guilty plea. Likewise, Levine's theory that the views expressed in his jury argument constituted a reasonable strategy under the circumstances is plausible; Levine wanted the jury to see him as a defense lawyer committed to truth and justice, with a client who was honest and repentant and thus not deserving of the death penalty.

■■■ The only area where a significant question arises concerning Levine's motives in representing Taylor has to do with his failure to pursue mitigation evidence. At the sentencing phase of a capital crime in Utah, the fact finder must weigh the mitigating factors against the aggravating factors, imposing the death penalty only if the aggravating circumstances outweigh the mitigating beyond a reasonable doubt and the death penalty is appropriate beyond a reasonable doubt. Utah Code Ann. § 76–3–207; *State v. Wood,* 648 P.2d 71 (Utah 1981). Possible mitigating circumstances include an accused's minimal history of prior criminal activity, extreme mental or emotional disturbance, extreme duress, mental disease, intoxication, drug influence, youth, minimal participation in the offense, or any other factor that might mitigate the penalty. Utah Code Ann. § 76–3–207(3).

■■■ Where a defendant has pled guilty to a capital crime, as here, his attorney has the sole duty of trying to prevent the imposition of the death penalty. Thus defense attorneys, to provide effective assistance of counsel at the sentencing phase, must adequately investigate all potentially mitigating factors. *See Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066 (stating that "counsel has a duty to make reasonable investigations"). Nevertheless, where the attorney can reasonably rule out a mitigating factor, further investigation is not required. *See id.* For example, one theoretically available mitigating circumstance would be the "substantial domination" of the defendant by another

person. Utah Code Ann. § 76–3–207(3)(c). In this case, Taylor makes no such claim, and the evidence does not suggest it in any way. Therefore, no investigation of this factor was warranted. However, where the defendant claims to have suffered from mental illness at the time of the crime or to have suffered serious mental illness previously, the attorney must investigate potential mitigation by mental disease or extreme mental disturbance. Nonetheless, the attorney does not have an obligation to introduce such evidence if she believes after a thorough investigation that it will harm the case or if other strategic reasons for its omission exist. *Strickland* at 690, 104 S.Ct. at 2066.

Taylor argues that Levine failed to conduct an adequate investigation of his psychological history and condition. However, Levine knew about Taylor's childhood psychological problems resulting from a facial scar, a learning disorder, and substance abuse in his family. Moreover, Levine had access to both of the psychological reports from the examinations that had been performed to determine sanity and competence. The trial court found that Levine made the reasonable decision that introducing evidence regarding mental health would hurt Taylor rather than help because of the negative information it would disclose to the jury, specifically Taylor's prior drug abuse and involvement with Satanism and witchcraft, including the drinking of animal blood. Levine quite plausibly decided that Satanic worship and blood drinking did not comport with the "boy next door" image he hoped to portray. The trial court's finding that this decision was reasonable was not clearly erroneous.

Moreover, Taylor fails to identify any mitigating information that might have been uncovered by additional investigation or another psychological exam. In other cases where failure to conduct a psychological exam has been held to constitute ineffective assistance of counsel, the defendants had a history of serious mental illness and could show how an investigation would have furthered their defenses. *See, e.g., Bouchillon v. Collins,* 907 F.2d 589, 596–97 (5th Cir. 1990) (subsequent history on other grounds omitted) (discussing various cases of ineffec-

tive assistance when attorney knew defendant had previously been hospitalized for mental illness). A defendant must show not only that counsel failed to seek mitigating evidence, but also that some actually existed to be found. *Blake v. Kemp,* 758 F.2d 523, 534 (11th Cir.1985) ("[Defendant] has adequately demonstrated a reasonable probability that he would have received a lesser sentence but for [attorney's] complete failure to search out mitigating character evidence. As the district court found, 'Petitioner has demonstrated that no favorable evidence was sought and that some was in fact available.' " (quoting *Blake v. Zant,* 513 F.Supp. 772 (S.D.Ga.1981))). Taylor has not suggested a helpful strategy that would have been supported by evidence not known to Levine. Failure to investigate mitigating factors can constitute ineffective assistance of counsel only where such factors actually exist and may be productively used in the penalty phase.

One of the problematic aspects of this case is the evolving nature of standards for adequate defense of a capital prosecution. The State appears to suggest in its brief that an extensive mitigation workup or investigation may not always be necessary (apparently such investigations were not universally undertaken in Utah at the time this case was tried). We are troubled by that proposition if it is intended to suggest that a less-than-adequate investigation will suffice. We hold here that Levine's mitigation investigation, although very limited, appears to have been adequate; there are no indications that he overlooked anything useful in Taylor's background. We emphasize that the failure to perform an adequate mitigation workup represents ineffective assistance of counsel. To demonstrate that counsel made an unreasonable judgment in not pursuing an investigation further, a defendant must identify potentially mitigating circumstances that the investigation would have uncovered. *See, e.g., Taylor v. Warden,* 905 P.2d 277, 286 n. 6 (Utah 1995) (holding that where defendant did not introduce psychological report containing potentially mitigating evidence at effectiveness hearing, court cannot make judgments about its contents). Defense attorneys need not present all evi-

dence uncovered by a mitigation workup, but they absolutely must perform one.

## III. CONFLICT OF INTEREST RESULTING FROM MINIMAL COMPENSATION

 Taylor also suggests that Levine's minimal compensation created a per se conflict of interest preventing him from giving Taylor adequate assistance of counsel. Taylor argues that flat fee compensation encourages lawyers to spend as little time on a case as possible and to promote plea bargains. We acknowledge that the problem of inadequate resources for defending capital cases creates significant potential for harm.[2] But Taylor has failed to allege, let alone identify, anything in this particular case to support the theory that *his* defense suffered.[3] At no time did Levine say, "We can't afford to have you psychologically tested," or anything of the kind. Moreover, Levine personally had substantial income from other sources during the period he represented Taylor and knew he could obtain extra compensation from the county if needed. Taylor did not introduce any evidence regarding other demands on Levine's time or point to inadequacies in the time spent on this case. Without this information, we must accept the lower court's assessment that Levine's income and resources did not affect his strategy and efforts in this case. Hence, under the conflict of interest standard discussed in part II above, Taylor has failed to demonstrate an actual conflict of interest.

## IV. CUMULATIVE ERROR

 Taylor claims that Levine violated Taylor's Sixth, Eighth, and Fourteenth Amendment rights by failing to fulfill his role as an advocate for Taylor. Despite citing the Eighth and Fourteenth Amendments, Taylor argues only the Sixth Amendment claim. He has, quite simply, failed to identify deficiencies in Levine's performance that had any apparent effect on the outcome of his penalty trial. We note that Taylor pled guilty to horrendous crimes and has never been able to suggest mitigating circumstances or undisclosed evidence which might have favorably influenced the jury. Fairness requires the observation that Levine did not have a lot to work with in his defense effort.

Levine's closing argument is a major target for Taylor's criticism. As Taylor suggests, Levine's closing argument was not a model of persuasive rhetoric. Levine began by telling a Native American story about how death came into the world but then failed to connect the story to his argument. Levine never asked the jury directly to spare his client's life, although he did say that "the killing has to stop somewhere." He told the jurors that balancing mitigating and aggravating factors meaningfully was extremely difficult if not impossible but that they had to do it anyway. He emphasized that Taylor himself thought his own crimes were "gross" and "vile." He repeatedly reminded the jury that Taylor, like criminals generally, did not think like "you and I." He mentioned, but did not elaborate on, the only mitigating factors he had, i.e., Taylor's relative youth and clean record. Overall, Levine did not give a virtuoso performance.

 Nevertheless, we are not in a position to review every closing statement in a

---

2. *See* Douglas W. Vick, *Poorhouse Justice: Underfunded Indigent Defense Services and Arbitrary Death Sentences*, 43 Buff. L.Rev. 329 (Fall 1995). Poor compensation for capital defense attorneys appears to attract poor attorneys as evidenced by the rate of disciplinary action and disbarment for these attorneys in various states. *Id.* at 398. Also, many capital defense attorneys lack general experience and have not received the training needed to defend a client in "one of the most specialized fields of practice in American law." *Id.* at 398–99. Furthermore, because of the minimal pay, attorneys often fail to spend the time needed to prepare for a case. *Id.* at 402–03. Instead, in order to survive economically, they must take on other cases that also demand time.

*Id.* This lack of preparation becomes particularly apparent in sentencing proceedings where attorneys fail to present mitigating evidence that does exist. *Id.* at 403–04; *see also* Anthony Paduano & Clive A. Stafford Smith, *The Unconscionability of Sub–Minimum Wages Paid Appointed Counsel in Capital Cases*, 43 Rutgers L.Rev. 281, 283 (1991) (examining whether statutorily set fees for capital defense attorneys remunerate lawyers so poorly that losing is more profitable than doing "everything possible to prevent a guilty verdict and death sentence").

3. We make no judgment about the efficacy of this argument in other cases with more evidence or in a system-wide challenge.

capital case to determine whether it was persuasive *enough*. As stated previously, an attorney's performance need only be "reasonable," *Templin*, 805 P.2d at 186–87, and the range of reasonableness is broad, *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. In the following cases, courts have held that defense attorneys' closing arguments did not meet the standard of effective assistance of counsel. In *United States v. Hammonds*, 425 F.2d 597, 604 (D.C.Cir.1970), the court found that "the totality of the omissions and errors, and particularly the futile closing argument, clearly reflect a pro forma defense and a lack of adequate representation in the preparation and trial of the case." The attorney's argument in *Hammonds* consisted primarily of telling the jury he did not intend to make a summation of the case and asking the jurors to do what the court told them to and that would constitute justice. *Id.* at 602. He failed to mention the presumption of innocence, the elements of the offense, the reasonable doubt standard, and the linchpin of the case—the defendant's lack of intent. *Id.* at 603. In *Wade v. Calderon*, 29 F.3d 1312, 1324 (9th Cir.1994), the court held that defense counsel's closing argument, which included telling the jury that the defendant would benefit from a death sentence because it would put him out of his misery, erased any doubt as to counsel's ineffectiveness. The court held that such an argument caused a " 'breakdown in the adversarial process that our system counts on to produce just results.' " *Id.* (quoting *Strickland*, 466 U.S. at 696, 104 S.Ct. at 2068).

In both cases, elements of the representation other than closing argument demonstrated ineffectiveness. *Hammonds* at 603 (listing other factors including failure to appear at arraignment, to conduct voir dire, to make opening statement, etc.); *Wade* at 1325 (discussing failure to remind jury about child abuse, use of inflammatory testimony by defendant, reuse of twice-rejected multiple personality theory). Nonetheless, both courts found the deficiencies of the closing arguments to be so serious as to make the representation, beyond question, ineffective and prejudicial. *Hammonds* at 604; *Wade* at 1324.

In this case, Levine explained to the jury its duty and reiterated the mitigating factors—youth and prior clean record. He told the jurors that life in prison is "a tortuous existence," perhaps to suggest it would be a suitable punishment. Compared to *Hammonds* and *Wade*, these factors and the lack of other significant failings in his representation suggest that Levine provided effective, albeit not exemplary, assistance of counsel.

An accurate assessment of the impact of closing argument on the jury in a penalty hearing is extremely difficult. At that point, the jury knows all the facts, has heard all the witnesses, and has received the applicable instructions. Some jurors may already have made up their minds. Oral argument builds on this base of information and attempts to operate on the hearts and minds of the jurors. Persuasion depends greatly on the quality of the interpersonal dynamic between counsel and the jury. There are nuances to oral communication that cannot be reflected on the printed page. Levine, having become acquainted with the jurors, may have decided that aggressive advocacy would have alienated or offended them; he may have been convinced that a low-key, minimalist approach would elicit their sympathy. We acknowledge that Levine's argument is so minimal as to represent the lower threshold of reasonableness and that if he had had any more to work with in the evidence or his client, we might have reached another result. Given the nature of the crime and substantial evidence against Taylor, however, even the finest closing argument is not likely to have saved him from the death penalty. The few mitigating circumstances operating in this case fall well below the level needed to offset the vicious character of his crimes. In our judgment, the understatement of Levine's closing argument did not lead to the death penalty for his client.

## CONCLUSION

As noted, Levine's representation of Taylor does not illustrate ideal defense attorney behavior. Taylor, however, was not the ideal defendant. Taylor voluntarily pled guilty to committing heinous crimes without provocation, and the State had irrefutable, detailed

evidence of those crimes. The chances that Taylor would have fared any better had the best criminal defense attorney in the country made the perfect argument are slim. For this reason, Taylor cannot show prejudice related to Levine's performance. Similarly, with regard to his conflict of interest claims, Taylor failed to show an actual conflict. The judgment of the trial court is affirmed.

ZIMMERMAN, C.J., and HOWE and RUSSON, JJ., concur in Justice DURHAM's opinion.

STEWART, Associate Chief Justice, dissenting:

There is no question that this case involves exceptionally wanton and heinous murders, and there is no question that defendant was the perpetrator. Nevertheless, whether the death penalty should be imposed was a question to be decided solely by the jury, but only after all the requisite legal procedures and requirements had been complied with. Defense counsel's failure to meet those requirements resulted in defendant's being denied the effective assistance of counsel as required by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Templin*, 805 P.2d 182 (Utah 1990).

The majority opinion states that "[d]efense attorneys ... absolutely must perform" a "mitigation workup." That was not done in this case. The majority opinion characterizes defense counsel's mitigation investigation as "very limited" but "adequate." *Id.* I cannot agree that it was adequate. Defense counsel did not conduct an in-depth investigation of defendant's psychological history and condition. It is simply not sufficient that the attorney knew about some of defendant's childhood psychological problems, his learning disorder, and substance abuse in his family. All those factors and possibly others that may have seriously affected defendant's character were simply not explored in any meaningful way for the purpose of providing some evidence that would weigh in favor of a life sentence. It may be that nothing would have come from an adequate mitigation workup that would have persuaded a jury to reach a different conclusion as to the appro-

priate penalty, but it is not possible to know what might have been discovered had defense counsel done his job.

Furthermore, defense counsel clearly should have been disqualified from representing defendant and any other capital defendant because of his failure to adhere to fundamental professional standards of competence and conduct. *See State v. Holland*, 876 P.2d 357 (Utah 1994) (discussing and disapproving defense counsel's personal approach and strategy in conducting defense of criminal cases); *see also id.* at 361 (opinion of Stewart, Assoc. C.J., & Durham, J.). Indeed, defense counsel's closing argument to the jury, to the extent it even addresses issues somewhat pertinent to the case, is more a self-justification of defense counsel than a plea that the jury impose a life sentence rather than death.

In my view, the death penalty should be vacated and the case remanded for another penalty hearing to take place after an appropriate mitigation workup has been conducted by competent counsel.