STATE of Utah, Plaintiff and Appellee,

v.

Michael Roger HOVATER, Jr.,
Defendant and Appellant.

No. 940618.

Supreme Court of Utah.

March 20, 1996.

Jan Graham, Atty. Gen., Joanne C. Slotnik, Asst. Atty. Gen., Salt Lake City, and William F. Daines, Ogden, for plaintiff.

Kent E. Snider, Ogden, for defendant.

RUSSON, Justice:

Michael Hovater appeals from a conviction of distributing a controlled substance within 1,000 feet of a park, a first degree felony, in violation of section 58–37–8(1)(a)(ii), –8(5)(a)(v) of the Utah Code. Hovater asserts that his trial attorney's conduct was so deficient that he was denied his constitutional right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 12 of the Utah Constitution. We affirm Hovater's conviction.

## I. BACKGROUND

During the latter part of October 1993, Michael Thorton telephoned the Weber Morgan Narcotics Strike Force on a "tip-a-cop" line and spoke with Tony Faux, an undercover police officer. Thorton informed Faux

that he possessed information about drug dealers and was willing to help police arrest and prosecute them. Thereafter, Thorton assisted Officer Faux in several undercover drug purchases by introducing the officer to drug dealers. On January 12, 1994, Thorton informed Officer Faux that Michael Hovater was selling narcotics from his home. Officer Faux decided to utilize Thorton in an attempt to purchase drugs from Hovater. Before embarking for Hovater's home, Officer Faux performed a routine search of Thorton to ensure that he possessed no contraband. Finding none, the two men traveled to Hovater's home, which was located directly across the street from a park and down the street from a school in Ogden, Utah. When they arrived, informant Thorton introduced Officer Faux to Hovater as "Jeff" and requested that Hovater sell methamphetamine to him. Hovater was reluctant to deal directly with Faux and, therefore, led Thorton into his bedroom. There, he gave Thorton a quantity of methamphetamine. Thorton left the bedroom and delivered the methamphetamine to Officer Faux. Faux then entered the bedroom and handed Hovater $50. Faux and Thorton then departed.

Hovater was subsequently charged by information with unlawful distribution of methamphetamine "within 1,000 feet of a school." He pleaded not guilty, and the matter was set for trial. On the first day of trial, the prosecution moved to amend the information to charge Hovater with unlawful methamphetamine distribution "within 1,000 feet of a park" instead of within 1,000 feet of "a school." Hovater objected to the amendment on the ground that the defense was deprived of adequate notice of the proposed amendment. His objection was overruled, and the matter proceeded to trial. A jury found Hovater guilty of unlawful distribution of methamphetamine within 1,000 feet of a park, and he was sentenced to five years to life in the Utah State Prison. Hovater appealed.

On appeal, Hovater claims that he was denied the effective assistance of counsel in violation of article I, section 12 of the Utah Constitution and the Sixth Amendment to the United States Constitution made applicable to the states through the Fourteenth Amendment.[1] Hovater claims that his legal representation was ineffective inasmuch as his attorney (1) failed to prepare an adequate defense by overly relying upon the original information alleging that the drug purchase occurred within 1,000 feet of a school; (2) failed to object to the prosecutor's direct examination of its witness, Officer Faux, whose testimony improperly bolstered informant Thorton's credibility; (3) failed to object when the prosecutor accused him of attempting to "skewer" the State's witnesses; and (4) failed to object to a remark by the prosecution during its closing argument implying that Hovater bore the burden of proving his innocence. The State responds that Hovater's attorney did not commit errors constituting ineffective legal representation and, even if such errors had indeed been made, the errors did not result in prejudice to Hovater.

## II. ANALYSIS

To demonstrate constitutionally ineffective representation, a defendant must establish that (1) his counsel's performance was so deficient as to fall below an objective standard of reasonableness, and (2) but for his counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984); *State v. Templin*, 805 P.2d 182, 186–87 (Utah 1990). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Templin*, 805 P.2d at 187 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068). The determination of whether deficient performance affected the outcome of the trial must be made by considering "the totality of the evidence [and] taking into account such factors as whether the errors affect the entire evidentiary picture or

1. Although Hovater cites article I, section 12 of the Utah Constitution and the Sixth Amendment to the United States Constitution, he does not independently brief the state constitutional question. We therefore consider only his federal analysis and treat only the federal issues. *See State v. Templin*, 805 P.2d 182, 185 (Utah 1990).

have an isolated effect and how strongly the verdict is supported by the record." *Id.* Because Hovater's claim is raised for the first time on appeal, it will be reviewed "if the trial record is adequate to permit decision of the issue and defendant is represented by counsel other than trial counsel." *State v. Humphries,* 818 P.2d 1027, 1029 (Utah 1991). We find the trial record adequate and that Hovater is represented by counsel other than his trial counsel. Therefore, we will proceed to review his claim.

### A. *Failure to Prepare an Adequate Defense*

■ Hovater claims that he was denied effective assistance of counsel because his attorney overly relied, to the detriment of the overall defense, upon the original information that charged Hovater with unlawful methamphetamine distribution "within 1,000 feet of a school." When the prosecutor moved to amend the information to charge Hovater with unlawful methamphetamine distribution "within 1,000 feet of a park," Hovater's attorney objected, stating: "We are prepared to argue the case as far as a thousand feet from the school. That is one of the main things we focused on throughout." Despite this argument, the trial court allowed the amendment.

Hovater contends that his attorney prepared no defense other than to rebut the State's allegation that the offense occurred within 1,000 feet of a school. However, the record shows otherwise. Hovater's main defense theory was that the methamphetamine belonged to Thorton and that on the morning of January 12, Thorton left his drugs at Hovater's home and then later that day, sold his drugs to Officer Faux pretending that the drugs belonged to Hovater. Hovater's attorney adduced testimony to this effect from two witnesses, Hovater and his wife. The same defense would have been pursued regardless of the crime's distance from the park or the school. His attorney's exuberance in objecting to the motion to amend the information does not contradict the fact that his counsel was prepared to proceed, and indeed did proceed, to defend Hovater by calling and questioning witnesses who testi-

fied as to his theory of defense. Hovater has failed to demonstrate that his attorney's intention to rebut the allegation that the crime occurred within a thousand feet of a school had a detrimental impact on the presentation of his primary defense—that Thorton sold the methamphetamine to Officer Faux.

### B. *Failure to Object to Officer Faux's Testimony Elicited to Bolster Thorton's Credibility*

Hovater asserts that his attorney was ineffective for failing to object to testimony offered by the prosecution to bolster informant Thorton's credibility in violation of rule 608 of the Utah Rules of Evidence. At trial, the prosecution's first witness was Officer Faux. During direct examination, the prosecutor asked him about the reliability of Thorton and specifically asked about Thorton's involvement in other cases:

Q: Did you make arrests and have charges filed using Mike Thorton?

A: Yes.

Q: Do you know how many people you bought from, approximately, during that period of time?

A: I would say between seven and ten during that period of time.

. . . .

Q: Of the people who have been charged using him and go through the system . . . have they been charged?

A: Yes.

Q: How many of those people have been convicted, if you know?

A: . . . Seven, I believe.

Q: Were they—ever been through trial with them?

A: No, I never had to go to trial on any of them. They all pled guilty after Preliminary Hearing.

. . . .

Q: . . . Have any of the other Defendants who have pleaded guilty ever made any claims that Michael Thorton attempted to plant drugs on them?

A: No, never. There has never been a hint or whisper that things didn't go exactly how the cases were presented.

During this exchange, Hovater's attorney did not object to either the prosecutor's questions or Officer Faux's responses thereto.

Hovater argues that Officer Faux's testimony concerning other convictions secured in part by the use of Thorton was adduced for the purpose of bolstering Thorton's credibility in clear violation of rule 608(a) of the Utah Rules of Evidence. Rule 608(a) provides:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:
>
> ...;
>
> (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Hovater contends that Thorton's credibility was never impugned prior to Officer Faux's bolstering testimony, this testimony was improperly elicited, and therefore, Hovater's lawyer should have objected to its admission.

The State responds that Thorton's credibility was indeed attacked during the opening statement of Hovater's attorney when he stated: "Do we really pay—pay very close attention to the informant. Watch the demeanor. You tell me at the end of the trial whether or not you believe that he is telling the truth." According to the State, this statement amounted to an attack on Thorton's credibility and, therefore, the resuscitation of Thorton's credibility was appropriate under rule 608(a).

A threshold issue is whether such an attack made during an attorney's opening statement can ever trigger the resuscitation of the attacked witness's credibility. Rule 608(a) provides that bolstering evidence is admissible "only after the character of the witness has been attacked *by opinion or reputation evidence or otherwise.*" (Emphasis added.) A number of jurisdictions with similarly worded rules have held that bolstering evidence is admissible following an attorney's disparagement of a witness's credibility during the attorney's opening statement. *See United States v. Cruz,* 805 F.2d 1464, 1480 (11th Cir.1986), *cert. denied,* 481 U.S. 1006 (1987); *United States v. Jones,* 763 F.2d 518, 522 (2d Cir.), *cert. denied,* 474 U.S. 981, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985); *State v. Van Der Heyden,* 615 A.2d 1246, 1249 (N.H. 1992); *People v. Cherry,* 161 A.D.2d 185, 554 N.Y.S.2d 884, 885 *appeal denied,* 76 N.Y.2d 854, 560 N.Y.S.2d 993, 561 N.E.2d 893 (1990).

■ However, it is unnecessary to decide at this time whether Utah's rule should be construed in a similar manner; even if we were to so hold, the opening statement of Hovater's attorney did not attack Thorton's character for truthfulness. The statement merely advised the jury to pay close attention to Thorton, especially his demeanor, during his testimony and decide if he did or did not tell the truth. The remarks were phrased in the alternative and cannot be construed as an attack on Thorton's credibility. It is common to advise juries during opening statements to carefully observe witnesses' demeanor and the manner in which they answer questions to determine if the witnesses are or are not truthful. Indeed, preliminary jury instructions, given by some judges before the presentation of evidence, commonly advise juries to pay close attention to witnesses and their demeanor to determine the weight that should be accorded their testimony. Just as such jury instructions do not constitute an attack on witnesses' credibility, the opening statement of Hovater's attorney did not constitute such an attack.

■ In any case, even if the opening statement had indeed attacked Thorton's credibility and even if such an attack during an opening statement could trigger proper bolstering of Thorton's credibility under rule 608(a), Officer Faux's bolstering testimony was in direct violation of rule 608(b). Rule 608(b) provides in pertinent part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) con-

cerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Officer Faux, during direct examination, was asked about specific instances where Thorton helped secure convictions of other suspected drug dealers. He was asked how many other persons were arrested, charged, and actually convicted with Thorton's help. In addition, Officer Faux was asked if any of these persons ever claimed that Thorton "attempted to plant drugs on them." This was extrinsic evidence offered to support the credibility of another witness in clear violation of rule 608(b). As such, the testimony was improper. And since the evidence had no conceivable beneficial value to Hovater, the failure to object to it cannot be excused as trial strategy. Hovater's counsel was deficient in failing to object to evidence so clearly in violation of rule 608(b). Therefore, Hovater has satisfied the first prong of the *Strickland* test.

■ However, Hovater must also establish that prejudice resulted from the error, as required by the second prong of the *Strickland* test. He must show that but for his attorney's failure to object, there is a reasonable probability that the outcome of his trial would have been different. In determining whether Hovater has satisfied his burden, the testimony of Officer Faux, informant Thorton, Hovater, and his wife must be considered.

Officer Faux testified as follows. On the afternoon of January 12, 1994, he met informant Thorton to discuss a possible drug purchase. Thorton suggested that they attempt to purchase drugs from Hovater. Officer Faux agreed. He searched Thorton thoroughly to ensure that he had no contraband. Finding none, the two drove to Hovater's house, intending to purchase methamphetamine from Hovater. After entering Hovater's home, Thorton introduced Faux to Hovater as "Jeff" and told him that Jeff was interested in buying methamphetamine. At Hovater's request, he and Thorton went to a bedroom alone for approximately two to five minutes while Officer Faux remained in the

living room. Shortly thereafter, Thorton exited the bedroom alone. Officer Faux immediately ushered him into a nearby bathroom where Thorton gave him the methamphetamine he had received from Hovater. Officer Faux and Thorton then entered the bedroom where Hovater remained. Officer Faux handed Hovater $50, and before leaving, Thorton asked Hovater if Faux could come back again to purchase more methamphetamine. Hovater replied that he could.

Next to testify was informant Thorton. Concerning the events of January 12, 1994, his testimony corresponded to Officer Faux's. Thorton testified as follows. During the afternoon, he, for the first time that day, and Officer Faux visited Hovater's home. He introduced Officer Faux as "Jeff" and requested that Hovater sell methamphetamine to him. Hovater led Thorton to a bedroom, where he expressed reluctance to deal with a stranger. After his fears were allayed, he removed a small bag of methamphetamine from a box near the bed and handed it to Thorton. Thorton took the drugs and left the bedroom. In a bathroom, Thorton gave Officer Faux the methamphetamine. The two then went to the bedroom, and Officer Faux handed Hovater $50. Just before they left, Thorton asked Hovater if Jeff could return to again purchase methamphetamine. Hovater replied in the affirmative.

The defense called Hovater as its first witness. He testified as follows. At about 9 a.m. on January 12, 1994, Thorton came to his house. Thorton owed him $50 for stereo repairs and came to offer drugs as payment. Although Hovater refused the drugs, Thorton left the drugs, stating that they would serve as security for the debt. Later that day, Thorton returned with Officer Faux, who was introduced as "Jeff," purportedly to inquire about the possibility of purchasing hotel accommodations Hovater had won in a drawing. He testified that he led Thorton into a bedroom where he kept the information about the hotel accommodations. There, Thorton informed Hovater that Jeff wanted to buy methamphetamine. Hovater testified:

> I said well that stuff that was left ... is there. He said I will sell him that. And I asked my wife, because I had to have—my

wife put it away. She seen it was out there on the dresser or on the headboard. And she wouldn't go for that. So she put it away. And I had to call my wife into the bedroom. And my wife obtained the hotel accommodations and the ... methamphetamine.

Hovater testified that Thorton left the bedroom with the methamphetamine and went into the bathroom with Jeff. They both returned together, and Thorton tossed $50 on the bed next to Hovater. After discussing the hotel accommodations, Thorton and Jeff left. According to Hovater's testimony, Thorton never asked if Faux could return to purchase drugs, and Hovater never intimated that he could. Another defense witness, Debra Hovater, Hovater's wife, essentially corroborated Hovater's testimony.

Hovater argues that the crux of the case was Thorton's testimony that Hovater sold the methamphetamine to Thorton and Officer Faux against his and his wife's testimony that he did not. It was Thorton's word against his and his wife's. Therefore, he argues, the improper bolstering of Thorton's credibility went to the very heart of the case, making the bolstering prejudicial.

 However, the record reveals that the case against Hovater was not based solely upon Thorton's testimony, but rather, upon the testimony of both Officer Faux and Thorton. Even without Thorton's testimony, the jury had sufficient evidence to convict Hovater on the sole basis of Officer Faux's testimony, along with expert testimony that the substances received from Hovater were methamphetamine. Officer Faux testified from his own personal knowledge that (1) he and Thorton went to Hovater's house to attempt to purchase methamphetamine from Hovater; (2) when they arrived, Thorton, without methamphetamine, went into a bedroom alone with Hovater to try to purchase drugs; (3) after a brief interval, Thorton emerged from the bedroom with methamphetamine; (4) after receiving the drugs from Thorton, Officer Faux handed Hovater

$50 for the drugs; and (5) Hovater said that Faux could return at another time to again purchase methamphetamine. While Hovater testified that he neither owned nor handled the methamphetamine but merely stored it as collateral for a debt, he does not deny that the drugs were at his house, that his wife put the drugs away, that he instructed his wife to retrieve the drugs which his guests took, and that he received $50 from one of his guests. Hovater was charged under section 58–37–8 of the Utah Code. That section, which was outlined in a jury instruction, prohibits any person from distributing or agreeing, consenting, offering, or arranging to distribute a controlled substance, in this case, methamphetamine.[2] Ownership of the illegal substance is not an element of the crime, and nonownership is not a defense. Nor is the actual handling of the drugs an element of the crime. *See State v. Gray,* 717 P.2d 1313, 1320–21 (Utah 1986); *accord State v. Pelton,* 801 P.2d 184, 185–86 (Utah Ct.App.1990). Clearly, there was sufficient evidence even without Thorton's testimony that Hovater distributed or agreed, consented, offered, or arranged to distribute methamphetamine. Hence, any bolstering of Thorton's credibility had, at most, an isolated impact on the case which is not enough to "undermine confidence in the outcome" of the trial.

*C. Failure to Object to the Prosecution's Accusation that Hovater's Attorney Attempted to "Skewer" State Witnesses*

 Hovater contends that his attorney was ineffective for failing to object and thereby defend himself against an accusation made by the prosecutor in the presence of the jury that he attempted to "skewer" the State's witnesses. At one point during his cross-examination of Thorton, Hovater's attorney accused him of changing his testimony. The prosecutor, William Daines, made an objection which the trial court sustained. After Hovater's attorney, Michael Boyer, attempted to restate the question, the following ensued:

2. Section 58–37–8(1)(a)(ii) of the Utah Code provides: "Except as authorized by this chapter, it is unlawful for any person to knowingly and intentionally: ...; (ii) distribute a controlled or coun-

terfeit substance, or to agree, consent, offer, or arrange to distribute a controlled or counterfeit substance."

MR. DAINES: No, your honor, and I will object to that. . . .

MR. BOYER: As long as Mr. Daines is objecting about the way I am asking the question, I would appreciate the fact if the witness didn't have to look at Mr. Daines before he responds to every question.

MR. DAINES: And I will object to that, too, your honor. This is becoming simply a system where they are attempting to skewer these people by means other than what the evidence in the case is.

MR. BOYER: Skewer?

THE COURT: Mr. Daines—

MR. DAINES: May I respond to that? I should be able to respond.

THE COURT: No, I want you to return to your seat, Mr. Daines.

Counsel, you are not to address each other. From this point forward you go through the Court.

Mr. Boyer is entitled to ask the last question he did because he is asking a question rather than telling the witness what he said. I believe it has been asked and answered, the Court agrees with you, Mr. Daines. . . . But Mr. Boyer is entitled to ask the question. Go ahead, Mr. Boyer.

Mr. Boyer then continued to question Thorton.

■ Hovater's counsel was not deficient for failing to object because an objection was unnecessary. " '[T]he failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance.' " *Codianna v. Morris*, 660 P.2d 1101, 1109 (Utah 1983) (quoting *State v. Malmrose*, 649 P.2d 56, 58 (Utah 1982)). The record indicates that after the prosecutor made his accusation, the trial court responded by silencing and admonishing the prosecutor and insisting that the cross-examination by Hovater's attorney proceed. The trial court's swift and firm intervention made any objection by Hovater's lawyer unnecessary. Indeed, an objection might have irritated the trial court since it had just ordered that the cross-examination continue.

### D. Failure to Object to Remarks that Hovater Bore the Burden of Proving His Innocence

■ Hovater asserts that his attorney should have objected to certain statements the prosecution made during its closing argument on the ground that the statements implied that the defense bore the burden of proving Hovater's innocence. During closing argument to the jury, the prosecutor reviewed the evidence received during the trial. The prosecution remarked that the evidence conformed to the expectations he had expressed during his opening statement in contrast to the opening statement given by Hovater's attorney which failed to indicate what evidence it would offer. The prosecutor said:

He . . . challenged you to compare when the case is over with what is said here. Did he tell you what the facts were? Did he tell you what his witnesses would testify to? Did he give you one word of what his witnesses would testify to? I would submit he did not.

Hovater argues that the prosecutor's statement led the jury to believe that the defense bore the burden of proving Hovater's innocence and that the State did not bear the burden of proving Hovater's guilt beyond a reasonable doubt. Therefore, argues Hovater, his attorney should have objected and his failure to do so constituted ineffective assistance of counsel.

■ Assuming without concluding that Hovater's attorney was deficient in failing to object to the prosecutor's remarks, we find that Hovater was not prejudiced by the failure because the jury was fully and correctly instructed by the trial judge as to which party bore the burden of proof. Misstatements of the law do not prejudice a defendant where the error has been satisfactorily corrected. *See, e.g., Yarrington v. Davies*, 992 F.2d 1077, 1080 (10th Cir.1993) (holding that defense attorney's misstatement of burden of proof did not prejudice defendant because counsel corrected error and trial court correctly instructed jury as to burden of proof and warned that attorneys' remarks were not evidence); *Harich v. Dugger*, 844 F.2d 1464, 1471–72 (11th Cir.1988) (holding that prosecutor's misstatement of law during

closing argument did not prejudice defendant because his attorney provided correct rendition of law and trial judge correctly instructed jury that closing arguments were not evidence), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1355, 103 L.Ed.2d 822 (1989); *Wilson v. McMacken,* 786 F.2d 216, 218–19 (6th Cir. 1986) (holding that prosecutor's misstatement of law did not prejudice defendant because trial judge warned that attorneys' comments were not evidence, explained that court would provide applicable law, and provided correct version of law); *State v. Boyatt,* 854 P.2d 550, 554–55 (Utah Ct.App.) (holding prosecutorial misstatements of law not prejudicial where trial court subsequently offered complete instruction on law and instructed jurors that they were obligated to follow law as stated by trial court), *cert. denied,* 862 P.2d 1356 (Utah 1993); *cf. Steffensen v. Smith's Management Corp.,* 862 P.2d 1342, 1346 (Utah 1993) (holding that misstatement of law in jury instruction was harmless error because language in same instruction correctly stated law).

In the case before us, the trial judge thoroughly informed the jury that Hovater must be presumed innocent of the crime charged unless and until the State proved otherwise beyond a reasonable doubt. Jury instruction four directed the jury:

Our laws and constitution require you to presume the innocence of a person accused of a crime. You must persevere in this presumption unless and until the prosecutor has proved the defendant guilty beyond a reasonable doubt.

In instruction six, the court directed:

[I]f the evidence has failed to establish one or more of said elements, you should find the defendant not guilty.

Instruction ten reminded the jury:

This presumption places upon the State the burden of proving the defendant guilty beyond a reasonable doubt.

In jury instruction two, the judge instructed the jury:

What the attorneys say is not evidence, and you are not to consider it as such.

And in jury instruction one, the judge stated:

It is the judge's responsibility to decide which laws apply to this case and to explain those laws to you.

While one may question whether the prosecutor's closing remarks imposed a burden of proof upon defendant, such error, if any, was sufficiently corrected by the trial court in its instructions to the jury. Even if Hovater's attorney had objected to the prosecutor's remarks, there is no reasonable probability that the outcome of the trial would have been different.

## III. CONCLUSION

We conclude that Hovater's right to the effective assistance of counsel was not abridged. His conviction is therefore affirmed.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and DURHAM, JJ., concur in RUSSON'S, J., opinion.