**STATE of Utah, Plaintiff and Appellant,**

v.

**Jeffery Scott WORTHINGTON, Defendant and Appellee.**

**No. 971668–CA.**

Court of Appeals of Utah.

Dec. 3, 1998.

Jan Graham, Atty. Gen. and Marian Decker, Asst. Atty. Gen., Salt Lake City, for Appellant.

Douglas L. Neeley, Ephraim, for Appellee.

Before BENCH, GARFF [1] and GREENWOOD, JJ.

## OPINION

BENCH, Judge:

The State appeals the trial court's Order of Dismissal in a prosecution for possession of a controlled substance (methamphetamine), a third degree felony in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1998), and possession of drug paraphernalia, a class B misdemeanor in violation of Utah Code Ann. § 58–37a–5(1) (1996). The trial court dismissed the case after ruling that the State had failed to afford defendant the safeguards required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We reverse and remand for further proceedings.

## BACKGROUND

On a morning in January 1997, a deputy sheriff received a call from the manager of a Sevier County manufacturing plant. The manager said that a plant employee had found drugs in an employee restroom. After arriving at the plant, the deputy obtained a small box from the manager. The box had the name "Scott" handwritten on the inside of its lid. The box contained a white powder and drug paraphernalia. After conducting a field drug test, the deputy concluded that the white powder was methamphetamine. Because defendant was the only "Scott" who had worked the night shift that had just ended, the deputy called on defendant at his home.

Defendant's wife met the deputy at the door of the home. The deputy told her that an incident had occurred at the plant and her husband was "the number one suspect." Defendant's wife escorted the deputy to the living room where defendant was sleeping on a couch. The defendant awoke and agreed to speak with the deputy. After taking the box from his pocket, the deputy asked defendant if he had ever seen the box before. Defendant did not respond. The deputy asked, "Is this box yours?" Again, defendant

did not respond. After the deputy said he was going to name the items in the box, defendant volunteered, "I have opened the box before and I have seen what is inside, but after that I put the lid on and put it away." The deputy subsequently arrested defendant.

Defendant was charged with possession of a controlled substance and possession of drug paraphernalia. Defendant filed a motion to suppress the incriminating statement he had made while the deputy was in defendant's living room. After a hearing on the motion, the trial court concluded that "[t]he questions asked by the [d]eputy amounted to a custodial interrogation," and suppressed the statement because it was made without a *Miranda* warning. The State appeals that decision.

## ISSUE and STANDARD OF REVIEW

The State argues that the trial court erred in concluding defendant was subjected to a custodial interrogation. Because the State has not contested the trial court's findings of fact, " 'the appellate court assumes that the record supports the findings of the trial court and proceeds to a review of the accuracy of the lower court's conclusions of law and the application of the law in the case.' " *State v. Teuscher*, 883 P.2d 922, 930 (Utah Ct.App. 1994) (quoting *Saunders v. Sharp*, 806 P.2d 198, 199 (Utah 1991)).

## ANALYSIS

■ "The standard for determining when a defendant is 'in custody' for *Miranda* purposes is well-settled. '[T]he safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a "degree associated with formal arrest." ' " *State v. Mirquet*, 914 P.2d 1144, 1146 (Utah 1996) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam))). The Utah Supreme Court has specified four factors that assist in determining

1. Senior Judge Regnal W. Garff, sitting by special appointment pursuant to Utah Code Ann. § 78–2–4(2) (1996) and Utah Code Jud. Admin. R3–108(4).

whether a suspect "is in custody and entitled to a *Miranda* warning prior to a formal arrest." *Id.* at 1147, 103 S.Ct. 3517. The four factors include: " '(1) the site of the interrogation; (2) whether the investigation focused on the accused; (3) whether the objective indicia of arrest were present; and (4) the length and form of interrogation.' " *Id.* (quoting *Salt Lake City v. Carner*, 664 P.2d 1168, 1171 (Utah 1983)). The United States Supreme Court, in *Stansbury v. California*, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam), noted the same four factors and determined that "[i]n deciding the custody issue, the totality of the circumstances is relevant, and no one factor is dispositive." *Id.* at 321, 114 S.Ct. at 1528.

Here, the trial court determined that the interview "amounted to a custodial interrogation" because (1) defendant awoke "in the presence of a police officer making accusatory statements" and (2) "[t]he deputy's attention was focused on the defendant .before he ever arrived at the defendant's home." We hold that neither of these reasons amount to a custodial interrogation as a matter of law.

### I. Accusatory Questioning

The State argues that the interview in defendant's home did not amount to a custodial interrogation in violation of *Miranda* because defendant's freedom of movement was not curtailed. The trial court determined that the deputy made accusatory statements, which indicated custodial interrogation. The Utah Supreme Court has stated that "even if a person is a suspect and accusatory questioning takes place in a police station, the person is not necessarily 'in custody' if there is no arrest or restriction on his freedom of movement and the interrogated person is free to terminate the interview and leave." *Mirquet*, 914 P.2d at 1148 (citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam)).

■ In *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), the United States Supreme Court ruled that an interview in a home did not amount to custodial interrogation because Beckwith's freedom of movement was not hindered. *See*

*id.* at 347, 96 S.Ct. at 1616. In *Beckwith*, federal agents interviewed Beckwith in a private home without informing him of his *Miranda* rights. *See id.* at 344, 96 S.Ct. at 1615. During the interview, Beckwith made incriminating statements to the agents. He later argued that the *Miranda* safeguards " 'should be extended to cover interrogation in non-custodial circumstances after a police investigation has focused on the suspect.' " *Id.* at 345, 96 S.Ct. at 1615 (quoting *United States v. Beckwith*, 510 F.2d 741, 742 (D.C.Cir.1975)). The Court rejected Beckwith's argument and explained that " '[i]t was the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted, which led the Court to impose the *Miranda* requirements with regard to custodial questioning.' " *Id.* at 346–47, 96 S.Ct. at 1616 (quoting *United States v. Caiello*, 420 F.2d 471, 473 (2d Cir. 1969)). Consequently, the Court concluded that Beckwith was not entitled to the *Miranda* safeguards. *See id.* at 347, 96 S.Ct. at 1616. Here, like the defendant in *Beckwith*, defendant was not in a custodial situation because his freedom of movement was not curtailed in any way.

Defendant points out that custodial interrogation can occur in a person's home. For example, in *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), four police officers entered a murder suspect's bedroom at four in the morning after a woman at the boardinghouse had admitted them. *See id.* at 325, 89 S.Ct. at 1096. The officers interrogated Orozco in his bedroom and obtained incriminating evidence. Although the interrogation occurred in Orozco's bedroom, he was clearly in custody. "From the moment he gave his name, according to the testimony of one of the officers, [Orozco] was not free to go where he pleased but was 'under arrest.' " *Id.* Unlike in *Orozco*, however, defendant had no restriction on his freedom of movement and therefore was not subjected to a custodial interrogation. *See Mirquet*, 914 P.2d at 1148.

### II. Focus of the Investigation

The State further argues that defendant was unaware of the deputy's focus on defen-

dant. The trial court determined that the deputy "focused on the defendant before he ever arrived at the defendant's home." The United States Supreme Court has stated that "[i]t is well settled ... that a police officer's subjective view that the individual under questioning is a suspect, if undisclosed, does not bear upon the question whether the individual is in custody for purposes of *Miranda.*" *Stansbury,* 511 U.S. at 324, 114 S.Ct. at 1529–30. The trial court found that the deputy told defendant's wife that "[t]here was an incident that happened at the mill and [defendant] is the number one suspect." There is, however, no evidence that defendant heard the conversation between his wife and the deputy. Thus, the deputy's subjective view that defendant was a suspect had no bearing on whether defendant was in custody.

Defendant argues, however, that any objectively reasonable person in defendant's position would have recognized that the deputy had focused his investigation on defendant. "An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned." *Id.* at 325, 114 S.Ct. at 1530. The Supreme Court, however, explained that an officer's beliefs

> are relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her "freedom of action." Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest. The weight and pertinence of any communications regarding the officer's degree of suspicion will depend on the facts and circumstances of the particular case.

*Id.* (quoting *Berkemer,* 468 U.S. at 440, 104 S.Ct. at 3150). Here, defendant failed to show that the deputy hindered his "freedom of action" in any way. "Although the 'focus' of an investigation may indeed have been on [the defendant] at the time of the interview ..., he hardly found himself in the custodial situation described by the *Miranda* Court as

the basis for its holding." *Beckwith,* 425 U.S. at 347, 96 S.Ct. at 1616. We therefore conclude that the trial court erred in determining that defendant made his statement during a custodial interrogation.

## CONCLUSION

In sum, the trial court erred, as a matter of law, in determining that defendant made his statement during a custodial interrogation in violation of *Miranda.* We therefore reverse the trial court's order suppressing defendant's incriminating statement and remand for further proceedings.

GARFF, Senior Judge, and GREENWOOD, Judge, concur.